UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FERNANDO MARTINEZ SIERRA, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. H-10-4984 |
| | § | |
| OCWEN LOAN SERVICING, LLC, AS | § | |
| SERVICING AGENT FOR DEUTSCHE | § | |
| BANK NATIONAL TRUST COMPANY, AS | § | |
| TRUSTEE FOR MORGAN STANLEY ABS | § | |
| CAPITAL I, INC., TRUST 2007-NC2, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

### I.    Introduction

Pending before the Court is the defendant's, Ocwen Loan Servicing, LLC, as servicing

agent for Deutsche National Trust Company, as Trustee for Morgan Stanley ABS Capital I, Inc.,

Trust 2007-NC2 ("Deutsche"), motion for summary judgment (Docket Entry No. 20).   The

plaintiffs, Fernando Martinez and Virginia Sierra, filed a response (Docket Entry No. 22).  The

defendant also filed an unopposed motion for leave to supplement its summary judgment motion

(Docket Entry No. 27), and a reply in support of its summary judgment motion (Docket Entry

No. 28).  The plaintiffs filed a surreply (Docket Entry No. 31). After having carefully reviewed

the motions, the responses, the record and the applicable law, the Court grants the defendant's

motions.

### II.    Factual Background

This case concerns a dispute over a mortgage secured by the plaintiffs' primary residence

at 301 Plymouth, Houston, Texas 77022.[1]   The plaintiffs telephonically submitted their loan

---

[1] The property encumbered by the mortgage is:

application on September 29, 2006, and they physically signed that application on October 10, 2006.  On November 13, 2006, the plaintiffs signed a final proposed Settlement Statement.  On November 14, 2006, the plaintiffs signed a Texas Home Equity Note, Affidavit and Security Instrument for $93,600.00 encumbering that property. Under the terms of the agreement, the plaintiffs are required to timely pay when due the principal of and interest on the debt, as well as any applicable late charges. New Century Mortgage Corporation was the original lender on the Note, but the Note and Security Instrument were subsequently transferred to Deutsche.

Since October 2008, the plaintiffs have not tendered any payments and are in breach of the Note. On December 4, 2008, Deutsche sent the plaintiffs a notice of default via certified mail, return receipt requested. On August 11, 2009, an application was filed for foreclosure of lien under Texas Constitution Article XVI, Section 50(a)(6)(D).[2]  On April 12, 2010, Deutsche retained the defendant as its attorney-in-fact and servicer-in-fact on the loan.  The defendant has not held an ownership interest in the Note.

As of July 21, 2011, the outstanding total amount owed on the Note was $121,131.92. On November 11, 2010, the plaintiffs filed suit in another Texas state district court,[3] requesting, *inter alia*, that the loan be declared void.  The defendant timely removed the plaintiffs' case to this Court, which has jurisdiction pursuant to 28 U.S.C. § 1332.

## III.    Contentions of the Parties

---

All of Lot "G" and the adjoining South 12 feet of Lot 11, and the South 12 feet of the West 40 feet of Lot 10, and the adjoining 75 feet of Lot "H", SAVE AND EXCEPT that portion previously conveyed to Lillie Miller in the Deed dated May 10, 1965, recorded under Clerk's File No. C-085024, all in Block 1, of OAKWOOD ADDITION, an Addition in Harris County, Texas, according to the map or plat thereof recorded in Volume 10, Page 61 of the Map Records of Harris County, Texas.

[2] *See In re: Order for Foreclosure Concerning Fernando Martinez Sierra, a Married Man, and Virginia Sierra and 301 Plymouth St., Houston, Texas 77022*, No. 2009-51141 (190th Jud. Dist. Ct. Harris County, Tex.).

[3] 129th Jud. Dist. Ct., No. 2010-74769.

### A.      The Plaintiffs' Contentions

The plaintiffs contend that New Century failed to comply with several provisions of Texas Constitution, article XVI, section 50, and that the defendant therefore cannot enforce the Note and lien.  Specifically, they claim that: (1) they did not receive timely notice of foreclosure; (2) they did not timely receive the requisite loan documents; (3) that New Century overcharged them; and (4) that New Century offered no alternative interest rates to substantiate the discount points fee. They assert that the defendant cannot enforce the Note or lien because it has not shown that it holds the original Note or copies of any endorsements.

### B.      The Defendant's Contentions

The defendant contends that New Century, the original lender, complied with Section 50 of Article XVI of the Texas Constitution because: (1) the plaintiffs timely received the requisite 12-day notice;[4] (2) the time of loan closing was permissible; (3) New Century did not charge the plaintiff fees in excess of 3% of the total loan amount; (4) the plaintiffs acknowledged receiving copies of all documents at closing; and (5) the plaintiffs are not entitled to relief under Section 50(a)(6)(Q)(x).  In its counterclaim, the defendant asserts claims for breach of contract, suit on a note, and, alternatively, equitable subrogation.[5]  It also seeks a judicial order for foreclosure.[6]

## IV.    Standard of Review

Federal Rule of Civil Procedure 56 authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to that party's case and on which that party bears the burden at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322

---

[4] *See* TEX. CONST. art. XVI, § 50(g).

[5] Because the Court finds entirely for the defendant, it need not address its alternative equitable subrogation claim.

[6] The defendant avers that, under the terms of the Note, attorney's fees and costs are recoverable in an amount to be determined by subsequent motion practice.

(1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).  The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323; *see also, Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003).  Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075).  "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'"  *Stults*, 76 F.3d at 656 (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994)).  The nonmovant may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."  *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted).  Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'"  *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009)

(internal citations omitted).  When determining whether the nonmovant has established a genuine issue of material fact, a reviewing court must construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)).  Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)).  Nonetheless, a reviewing court may not "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (citing *Morris*, 144 F.3d at 380).  Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

## V.    Analysis and Discussion

The Court grants the defendant's motions. Because the defendant has now produced color copies of the original loan documents, and for the reasons that follow, the Court orders that the defendant is entitled to foreclose on the property.

### A.    Section 50 of Article XVI of the Texas Constitution

The Court grants the defendant's motion for summary judgment regarding each of the plaintiffs' claims under the Texas Constitution, which establishes required procedures for the issuance of a home equity loan that must be adhered to if the lender desires to enforce the Note and lien against a borrower's homestead.

### 1.    12-Day Notice for Extension of Credit

The Court grants the defendant's motion regarding the plaintiffs' claim under Texas Constitution, article XVI, Section 50(g). A home equity loan "may be secured by a valid lien against homestead property if the extension of credit is not closed before the 12th day after the lender provides the owner with the . . . NOTICE CONCERNING EXTENSIONS OF CREDIT DEFINED BY SECTION 50(A)(6), ARTICLE XVI, TEXAS CONSTITUTION" ("12-day notice").  TEX. CONST. art. XVI, § 50(g).

On October 10, 2006, the plaintiffs each signed a notice of extension of credit, and their loan was not closed until November 14, 2006 – well after the requisite twelve-day waiting period. In their response, the plaintiffs do not dispute this timeline. Accordingly, the Court grants the defendant's summary judgment motion on this issue.

### 2.    12-Day Notice for Loan Application

The Court grants the defendant's motion regarding the plaintiffs' claim under Texas Constitution, article XVI, Section 50(a)(6)(M)(i), which provides that a home equity loan may not close before "the 12th day after the later of the date that the owner of the homestead submits a loan application to the lender for the extension of credit or the date that the lender provides the owner a copy of the notice prescribed by Subsection (g) of this section."

As noted above, the plaintiffs received their 12-day notice on October 10, 2006.  They had submitted their loan application via telephone on September 29, 2006, which they subsequently signed on October 10, 2006. Therefore, no Texas constitutional violation exists because the plaintiffs signed their loan application and received their 12-day notice more than thirty days before closing on November 14, 2006.

### 3.    The Timing of the Loan Closing Complied with the Texas Constitution

The Court grants the defendant's motion regarding the plaintiffs' claim under Texas Constitution, article XVI, Section 50(a)(6)(M)(ii), which provides that a home equity loan may not be closed before:

> one business day after the date that the owner of the homestead receives a copy of the loan application if not previously provided and a final itemized disclosure of the actual fees, points, interest, costs, and charges that will be charged at closing.

The plaintiffs received a copy of their telephone loan application on October 10, 2006, when they signed their paper application. The final proposed Settlement Statement, which provides the itemized disclosure of actual fees, points interest, costs and charges for closing was faxed to the plaintiffs on November 13, 2006, and signed and dated by the plaintiffs the same day – one business day before the loan closed on November 14, 2006.  The plaintiffs now claim that, although their dated signatures on the Settlement Statement forms "appear to be genuine," they deny signing those forms prior to the closing date.[7]  While this unsubstantiated claim may create a fact issue, the Court determines that the issue is neither material nor genuine. The plaintiffs signed two separate affidavits verifying that they received the itemized disclosure of closing costs at least one business day prior to closing.  Thus, the timing of the loan closing was proper, and the Court grants the defendant's summary judgment motion on this issue.

### 4.      3% Rule

The Court grants the defendant's motion regarding the plaintiffs' claim under Texas Constitution, article XVI, Section 50(a)(6)(E), which provides that a lender on a home equity loan may not charge a borrower fees "that are necessary to originate, evaluate, maintain, record,

---

[7] The plaintiffs also make the irrelevant claim that one of their signatures might read "11/12/06" rather than "11/13/06."  Even if true, such a distinction is unimportant because a signature on 11/12/06 still complies with the mandate of Section 50(a)(6)(M)(ii).

insure, or service the extension of credit that exceed, in the aggregate, three percent of the original principal amount of the extension of credit" ("the 3% rule").

In this case, the total amount of the loan was $93,600.00.  Accordingly, the lender could not charge the plaintiffs closing fees of more than $2,808.00,[8] to comply with the 3% Rule.  The parties agree that the plaintiffs were charged at least $2,072.00 in closing fees, but they disagree as to whether the additional $1,404.00 loan discount to New Century is included in the computation of fees charged under the loan that count towards the 3% rule.

The Court determines that the lender credit to New Century is not included in the costs subject to the 3% rule.  *See Cerda v. 2004-EQR1, LLC*, 612 F.3d 781, 794-95 (5th Cir. 2010). Loan discounts are a form of interest, and interest is not included in closing costs and cannot be included in the 3% cap on fees.  *Cerda*, 612 F.3d at 794-95 (citing *Tarver v. Sebring Capital Credit Corp.*, 69 S.W.3d 708, 709 (Tex. App. – Waco 2002, no pet.)).[9]

Moreover, even if the Court was to determine that loan discounts are generally included in the 3% cap on fees, the present parties contracted otherwise. On November 14, 2006, the plaintiffs signed a document that expressly "acknowledge[d] that discount point(s) are 'interest' in accordance with Section 50(a)(6)(E), Article XVI, of the Texas Constitution and are excluded from the 3% limit on fees required by the Lender from the Borrower(s) and non-borrowing owner(s), if any, to originate, evaluate, maintain, record, insure, or service the extension of credit."[10]  Therefore, the plaintiffs cannot add the broker's loan discount to the originating lender

---

[8] $93,600.00 x 0.03 = $2,808.00.

[9] The Court is not persuaded by the plaintiff's reference to the nonbinding state appellate court decision that decided this issue in the borrower's favor.  *Texas Bankers Ass'n v. Ass'n of Cmty. Orgs. for Reform Now*, 303 S.W.3d 404 (Tex. App. – Austin 2010).  This issue and case are currently on appeal to the Texas Supreme Court.

[10] For this same reason, the Court is not persuaded by the plaintiffs' references, unaccompanied by case citations, to "special circumstances" in this case that would require including the discount points in tabulating whether the 3% rule had been broken.

to the calculation of the total fees under the 3% rule.  Without the inclusion of the $1,404.00 loan discount to New Century, the fees charged on the loan are under the 3% cap. Furthermore, the plaintiffs also signed an Owner's Affidavit for Equity Loan, in which they swore that they were not charged fees in excess of the 3% rule.[11] Accordingly, the Court grants the defendant's summary judgment motion on this issue.

### 5.    Copies of Documents

The Court grants the defendant's motion regarding the plaintiffs' claim under Texas Constitution, article XVI, Section 50(a)(6)(Q)(v), which mandates that borrowers be provided with copies of their final loan application and all documents signed by them at closing related to the extension of credit. The plaintiffs claim that the originating lender failed to provide them with copies of the documents they signed at closing related to the loan, but they signed a receipt[12] verifying that they received all such documents on November 14, 2006.

To contest this claim and the preceding claims, the plaintiffs proffer affidavits stating that they received no copies of documents until the loan closing. However, these self-serving and after-the-fact affidavits are contradicted by numerous documents that they signed contemporaneously indicating that they did in fact receive copies of relevant documents during the loan process. Thus, the Court determines that no genuine issues of material fact remain disputed on this claim.  *See Tyler v. Cedar Hill Indep. Sch. Dist.*, 426 Fed. Appx. 306, 309 (5th Cir. 2011) ("We have repeatedly held that self-serving affidavits without more, will not defeat a

---

[11] Specifically, they signed a statement attesting that they have "not paid, in addition to interest, fees to any person that are necessary to originate, evaluate, maintain, record, insure, or service the Loan that exceed, in the aggregate, three percent (3%) of the Loan amount."

[12] The receipt was entitled "Texas Home Equity Owner's Receipt of Closing Documents."

motion for summary judgment.") (citing *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005)).

### 7.    60-Day Notice

The Court grants the defendant's motion regarding the plaintiffs' claim under Texas Constitution, article XVI, Section 50(a)(6)(Q)(x), which penalizes the lender and any future holder of a note and lien executed by the borrower of a home equity loan for failure to comply. That provision reads, in relevant part:

> (a) The homestead . . . is hereby protected from forced sale, for payment
> of all debts except for: . . .
>> (6) an extension of credit that: . . .
>>> (Q) is made on the condition that: . . .
>>>> (x) except as provided by Subparagraph (xi) of this paragraph, the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit and fails to correct the failure to comply not later than the 60th day after the date the lender or holder is notified by the borrower of the lender's failure to comply.

TEX. CONST. art. XVI, § 50(a)(6)(Q)(x).  Because, as shown above, none of the plaintiffs' alleged Texas constitutional violations actually occurred, this constitutional provision is not triggered.  Thus, the Court grants the defendant's motion on this issue.

### B.    Breach of Contract

The Court grants the defendant's motion regarding its breach-of-contract claim. To prevail on this claim, a claimant must show: "(1) the existence of a valid contract; (2) performance or tendered performance by the [claimant]; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach."  *Valero Mtkg. & Supply Co. v.*

*Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App. – Houston [1st Dist.] 2001, no pet.) (internal citation and emphasis omitted).

The Note is a written contract between the parties, signed by the plaintiffs, which evidences the parties' mutual assent. The defendant, as servicing agent for Deutsche, successor to the original lender New Century, performed under the terms of the Note by lending the plaintiffs $93,600.00. The plaintiffs admit to defaulting on the Note, and they have, therefore, breached the Note's requirement that they make monthly payments. As of July 21, 2011, the total outstanding amount owed on the Note was $121,132.92. Accordingly, the Court grants the defendant's motion regarding breach of contract and determines that the defendant is entitled to an order of foreclosure. *See* TEX. CONST. art. XVI, § 50(a)(6)(D).

### C.      Suit on the Note

The Court grants the defendant's motion for suit on the Note. To prevail on this claim, the defendant must prove that: (1) the debt or Note exists; (2) the plaintiffs signed the Note; (3) the defendant, as servicing agent for Deutsche, holds the Note; and (4) a balance under the Note is due and owing. *See Doncaster v. Hernaiz*, 161 S.W.3d 594, 602 (Tex. App. – San Antonio 2005, no pet.).

On November 14, 2006, the plaintiffs signed and entered a Texas Home Equity Note, Security Instrument, and Affidavit and Agreement for a $93,600.00 loan. The defendant, as Deutsche's servicing agent, is the current holder of the Note, as evidenced by the defendant's proffered Assignment of Deed of Trust[13] and a color copy of the Note.[14] As of July 21, 2011, the total outstanding amount owed on the Note was $121,132.92. Thus, the defendant has

---

[13] *See* Docket Entry No. 20, ex. A-4.

[14] *See* Docket Entry No. 27.

established all four elements for its claim of suit on the note, and the Court grants the defendant's motion on this issue.  *See* TEX. CONST. art. XVI, § 50(a)(6)(D).[15]

## VI.    Conclusion

Based on the foregoing discussion, the Court GRANTS the defendant's motions.[16]

It is so **ORDERED**.

SIGNED at Houston, Texas this 16th day of February, 2012.

Kenneth M. Hoyt
United States District Judge

---

[15]    To the extent that the plaintiffs are asserting any defect in an earlier loan closed on August 27, 2004, the Court determines that their claim is barred by: (1) the statute of limitations; (2) waiver because they allowed that lien to be paid off with the currently contested loan; and (3) the fact they did not give notice to their 2004 lender of alleged defects in that loan's origination.

As to the statute of limitations, alleged violations of the constitutional requirements for home equity loans are subject to a four-year statute of limitations, which begins to run from the date of closing on the loan.  Tex. Civ. Prac. & Rem. Code § 16.051 (four-year statute of limitations applies to actions for which limitations period has not otherwise been created by statute.  *See also Boutari v. JP Morgan Chase Bank, N.A.*, No. 5:09-cv-608, 2010 U.S. Dist. LEXIS 144094, *35-36 (W.D. Tex., June 10, 2010) (order accepting magistrate judge's report and recommendation), aff'd 429 Fed. Appx. 407 (5th Cir., June 20, 2011); *Reagan v. U.S. Bank Nat'l Ass'n*, No. H-10-2478, 2011 *WL* 4729845, *3 (S.D. Tex., Oct. 6, 2011); *Johnson v. Deutsche Bank Nat'l Trust Co.*, No. H-10-3360, 2010 *WL* 4962897, *4 (S.D. Tex., Dec. 1, 2010); *Rivera v. Countrywide Home Loans, Inc.*, 262 S.W.3d 834, 840 (Tex. App. – Dallas 2008, no pet.) The plaintiffs did not file their suit alleging violations of Section 50(a)(6)(E) regarding their 2004 loan until November 11, 2011. Therefore, their claim regarding the 2004 loan is barred by the four-year statute of limitations.

As to waiver, the plaintiffs waived any complaint that they may have had regarding the origination of their 2004 loan. "The affirmative defense of waiver can be asserted against a party who intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right." *Tenneco Inc. v. Enter. Prods., Co.*, 925 S.W.2d 640, 642 (Tex. 1996) (internal citation omitted). Waiver can be shown by express renunciation of a known right or by "[s]ilence or inaction for so long a period as to show an intention to yield the known right." *Tenneco Inc.*, 925 S.W.2d at 642 (internal citation omitted). More than six years elapsed between the 2004 loan's closing and the present lawsuit, and the Court determines that the plaintiffs have waived their right to their claim regarding the 2004 loan.

[16] The Court orders the defendant to file a motion regarding attorney's fees within ten days of entry of this Memorandum Opinion and Order.  The plaintiffs will have ten days to respond after the defendant files its motion.